Mrs. S. E. Gibbs, Executrix, and Mrs. L. A. Abercrombie,
Executrix, v. T. J. Petree et al.

No. 590.

1.  **Amendment of Attachment Suit—Judgment.**—A suit was brought for $525 against three defendants, married women, by attorneys who had recovered a tract of land for them, and attachment was issued for the whole amount and levied upon land. By amended petition it was alleged, that the defendants had agreed to pay one-third each, or $175 apiece, with prayer for foreclosure of the attachment as in the original petition. Service having been made on only one of the defendants, the case was dismissed as to the other two, and judgment by default against the third. Subsequently, on motion of the plaintiffs, because of an insufficient service upon that defendant, the judgment was set aside, the case transferred to the Justice Court, and there, after new service by publication on the one defendant, judgment was rendered against her with foreclosure of the attachment, under which judgment the testator of appellants bought the land.   *Held*, the judgment was valid and the title thereunder good.

2.  **Amendment Not a New Cause of Action, or Abatement of Attachment.** The amendment of the petition was not such a change of plaintiffs' cause of action as operated as an abandonment of the original suit or a dissolution of the attachment. It declared the liability of defendants' separate property just as it was by law; no additional burden upon the land was imposed, nor did it change the identity of the cause of action asserted, but corrected an error in the original petition by stating a several and not a joint liability, which was admissible.

3.  **Jurisdiction of Justice Court.**—All presumptions are to be indulged in favor of the jurisdiction of the Justice Court. From aught that appears, there may have been pleadings filed in the District Court or County Court dismissing the suit against all the defendants but the husband and wife against whom judgment was rendered; but upon the record as presented the jurisdiction can be sustained, because the order of the District Court dismissing the suit as to the defendants not served was not affected by the order setting aside the judgment by default. Thereafter, the suit was against one only of the defendants and her husband, and for a sum within the jurisdiction of the justice of the peace.

4.  **Transfer of Causes to Justice Court.**—The transfer of the case should have been made directly from the District to the Justice Court, but the fact that it went through the County Court is an irregularity merely, which did not defeat the jurisdiction of the proper tribunal.

5.  **Venue—Attachment.**—The suit was properly brought in the county where some of the defendants resided, and the attachment could run to any county in the State where defendant had property.

6.  **The Attachment Valid.**—The fact that the amount sued for was reduced by amendment, after the attachment had been levied, did not change its character or render the writ nugatory.

7.  **Executory Sale of Land—Recovery of Land.**—The sale of the land to the defendants being executory, and the purchase money not having been paid nor tendered, plaintiffs, who were devisees of the vendors, were entitled to recover the land sued for.

Appeal from Walker.    Tried below before Hon. J. M. Smither.

*B. Randolph*, for appellants.—1.  The court erred in overruling plaintiffs' general and special exceptions to defendants' second amended

answer, and in refusing to strike out of said answer such averments as sought to attack the validity of the judgment rendered in the Justice Court in precinct number 1 of Madison County in a collateral proceeding in this court.

The justice's judgment imported complete verity on its face, and the averments in said amended answer and the exhibits thereto attached did not show that it was void, nor did they show such errors as would have authorized its reversal on appeal.

2. After the Constitution of 1876 was adopted the Justice Courts alone had jurisdiction of the amount sued for under amended petition, and they then had jurisdiction to foreclose attachment liens on land.   Hillebrand v. McMahan, 59 Texas, 450.

3. An amendment which charges that defendant signed the note and was individually liable for its payment, instead of the partnership, as originally averred, does not set up a new cause of action or justify a court in dissolving the attachment issued and levied at institution of suit.   Massay v. Blake, 20 S. W. Rep., 782.

It has never been held that a failure to state the amount of the demand, as subsequent judicial investigation may find it really to be, will vitiate an attachment.   Donnelly v. Elser, 6 S. W. Rep., 568.

*McKinney & Hill,* for appellees.—1. Judgments against nonresident defendants cited by publication, on whom no personal service of process has been made in this State, and who do not appear, will be void unless a valid attachment has been issued and levied on the property of such defendants in this State, and unless the lien created by such levy has been foreclosed by a court of competent jurisdiction.   Pennoyer v. Neff, 95 U. S., 714; Stewart v. Anderson, 70 Texas, 588.

2. The attachment issued out of the District Court of Madison County, in the case of Abercrombie and Banton v. Brantley and others, was without legal force or effect, and the levy thereof did not create a valid lien on the lands of Mrs. Brantley, she being a nonresident; and the said lands not being situated in Madison County, where said suit was instituted, and neither of the plaintiffs in said suit being residents of said county, the court was without jurisdiction to issue the attachment process, and the proceedings thereunder were null and void.   Martin v. Cobb, 77 Texas, 544.

3. Said judgment of October 3, 1876, is void, because the amount of the demand of the plaintiffs, as set forth in plaintiffs' amended petition, filed August 8, 1874, and in the citation by publication to Brantley and wife, and prosecuted to judgment against said defendants, was not set forth in plaintiffs' affidavit for attachment as required by law, and the cause of action stated in said amended petition, and which said defendants were cited to answer, and for which judgment was rendered against them, was a different cause of action from the

528 · Texas Civil Appeals Reports. · [1st District,

one stated in the original petition and the attachment affidavit in said cause. Pasch. Dig., art. 142; Drake on Attach., secs. 84, 88, 88a, 89; 1 Am. and Eng. Encyc. of Law, 901; Stewart v. Anderson, 70 Texas, 588; Rowley v. Berriam, 12 Ill., 199.

WILLIAMS, Associate Justice.—The leading question in this case is, whether or not the judgment under which appellant's testator bought the land in controversy was void. If it was not, the judgment appealed from is erroneous and should be reversed, and a decision of the other points presented in the briefs will be unnecessary.

The facts upon which the question arises are the following: On the 9th of July, 1874, L. A. Abercrombie and J. H. Banton, who had been partners in the practice of law, brought suit in the District Court of Madison County against three married women, Mrs. Wells, Mrs. Manning, and Mrs. Brantley, joining their husbands, alleging the residence of the two former to be in Madison County, and that Mrs. Brantley was a nonresident of the State. The suit was to recover a fee for services rendered by plaintiffs in prosecuting a suit to recover lands which were the separate property of the married women, and for the value of which, it was alleged, they had agreed to pay plaintiffs at the termination of the suit. It was further alleged, that the suit had been finally determined in favor of said married women, and that the services were worth $525.

The other essential allegations were made. At the institution of the suit, an attachment for $525 was taken out against the property of Mrs. Brantley, and was levied on the land in controversy, situated in Walker County.

Subsequently Banton died, and Abercrombie was allowed to prosecute the suit as surviving partner. On the 8th of August, 1874, Abercrombie filed an amended petition, in which he repeated substantially the allegations of the original petition, except that he averred that each of the female defendants had agreed to pay her proportionate share of the value of the services to be rendered, or the third of the whole amount, and charging the liability of each to be $175; and also alleging, in terms, that the debt was incurred for the benefit of the separate property of the married women.

On the 17th day of August, 1875, a judgment was entered in that cause, which recited "that the defendants, Nancy S. Wells and her husband, Harrison Wells, and Elvira L. Manning and her husband, John W. Manning, have not been served with process or citation in this cause. The plaintiff says he will no further prosecute his said suit against said defendants;" that "the defendant, Georgia Ann Brantley, having failed to appear and answer in this behalf, but wholly made default," etc.; proceeding to adjudge against those defendants the sum claimed in the amended petition, interest and costs, and fore-

closing the attachment lien on the land attached. On the 18th day of August, 1875, the plaintiff in that suit filed his motion to set aside "the judgment herein rendered yesterday in his favor," on the ground that there was grave doubt as to the sufficiency of the service upon the Brantleys, and "in order that he may obtain service upon said Georgia Ann Brantley." On this motion the following order was made:

"On this August 1st came on to be heard plaintiffs' motion to set aside judgment rendered in the cause at a former day of this term, because of a doubt of the legality of the citation served against or on the defendants, and upon consideration the said motion is sustained by the court; and it is therefore ordered, that said judgment be set aside and held for naught, and that said cause be reinstated on the docket."

On the 16th day of February, 1876, citation for publication to the Brantleys was issued. No point is made in the briefs as to the sufficiency of the citation and its service. It commanded the sheriff to summon Georgia Ann Brantley and her husband to answer the petition of L. A. Abercrombie, surviving partner, etc., against "Georgia Ann Brantley and William Brantley, Harrison Wells and his wife, Nancy Wells, John W. Manning and his wife, Elvira Manning;" gave the substance of the allegations in the pleadings of plaintiff as amended, and contained all the other essential parts of such process. It made no mention of the fact that the cause had been discontinued as to all defendants except Brantley and wife. The return of the sheriff shows publication for the requisite time, and no exception is taken to its sufficiency. June 27, 1876, the cause was, by order of the District Court, transferred to the County Court. September 19, 1876, it was by order of the County Court transferred to the Justice Court.

On the 3rd of October, 1876, the judgment in question was entered in the Justice Court. It recites, that the defendants Wells and wife and Manning and wife had not been served with process, and that plaintiff no further prosecutes his suit against them; that Mrs. Brantley and husband failed to appear; that service of process in this cause had been duly made upon them by publication in proper manner and for the legally required length of time, and proceeds to adjudge against them, in plaintiff's favor, the sum claimed in the amended petition, interest and costs, and to foreclose the lien of the attachment originally issued and served; adjudging also, that the separate property of Mrs. Manning is subject to the debt.

Under an order of sale, issued on this judgment, the land was sold by the sheriff, and bought by and conveyed by sheriff to testators of appellants.

The facts above stated appear from the documents referred to, copies of which were introduced in evidence. The clerks of the District and County Courts and the justice certify to the orders and judgment from

their respective courts, and that they are all that appear of record therein. But the other papers were offered separately, and there is no certificate or other evidence that they are all that are on file; nor is there anything to show that a complete transcript of all of the papers from either of the courts was produced.

The defendants bought· the land from Brantley and wife after the rendition of the judgment in the Justice Court, but before the sheriff's sale at which Abercrombie and Gibbs purchased. Subsequently, believing that the title of Abercrombie and Gibbs was superior to that which they had acquired by their purchase from Brantley and wife, defendants bought from the former, giving their notes for the purchase money, and receiving a deed which reserved a vendor's lien on the land until the notes should be paid. The notes were never paid, and this suit was brought by Abercrombie and Gibbs to rescind the contract of sale and recover the land. Defendants pleaded the facts above set forth, claimed that they had received a good title from Mrs. Brantley, and prayed also for a rescission, but resisted the plaintiffs' right to a judgment for the land. There was no evidence of any representation made by Abercrombie to Gibbs to induce the purchase by defendants.

The court below held that the judgment was void; that there was no consideration for the sale from Abercrombie and Gibbs to defendants; that the contract should be rescinded; and that defendants should recover the land.

*Conclusions of Law.*—1. The amendment of his pleadings filed by Abercrombie in the former suit was not such a change of his cause of action as operated as an abandonment of the original suit, or a dissolution or abatement of the attachment. The facts stated in the original petition, so far as they tended to show a liability of the separate property of the married women, showed such liability to be just what by the amendment it was declared to be. If the attorneys were employed by the married women to recover the property in which they were jointly interested, each might thereby make her separate property liable to the extent that it was benefitted by the services, but could hardly charge it with expenses incurred by her coplaintiffs for their own benefit. Though a joint undertaking of them all was alleged in the original petition, it is believed that the effect upon the married women could only have been as just stated. By describing the agreement as joint, the plaintiff may have run the risk of a variance between his allegations and proof, if the latter showed it to have been several; but the liability of the married women would have been the same in either case. The amendment did not seek to impose any additional burden on the land attached, or set up any new claim to the injury of the defendant; nor did it change the identity of the cause

of action asserted, or the character in which the plaintiff sued, or in which Mrs. Brantley was sought to be made liable. It simply corrected an error in the original petition by stating a several agreement, instead of a joint one, and by making definite what had before been left somewhat uncertain as to the character of the claim asserted, but not, as we have seen, changing the liability resulting from the facts first stated. All this we understand to be the proper office of amendment. It may be true that a plaintiff can not attach upon one cause of action, thus getting jurisdiction over property when there is none over the person, and afterwards set up an entirely new one, and upon that seek to hold the property seized; for in order to enforce the jurisdiction over the property, the judgment must be rendered in the same suit in which it was seized; and in the case supposed, the amendment would, in all essentials, be the bringing of a new action. But a plaintiff may amend his pleadings in this kind of a suit as well as in others, and the amendment in question was only an exercise of that right, and left the attachment in force.

2. Did the Justice Court acquire jurisdiction of the cause and over the attached property? We hold that it did. All presumptions are to be indulged in favor of such jurisdiction. We are not assured that we have before us all the papers which were filed in the District and County Courts before the suit was transferred to the Justice Court. For aught that appears, there may have been pleadings filed dismissing the suit as against all of the defendants except the Brantleys. If there had been such dismissal, the order of the County Court transferring to the Justice Court, and of the latter court entertaining jurisdiction, which otherwise would appear to have been wrong, would be supported as correct. What should be the presumption? We think, clearly, the fact which would sustain the action of the courts. But, taking the record as presented, we think the jurisdiction of the Justice Court can still be maintained. The record entry in the District Court shows that there was a dismissal as to the Welshes and Mannings. In the same entry was a judgment against Mrs. Brantley and husband. The motion made to set aside the judgment did not, we think, reach the order of dismissal, but only the judgment. The language used in the motion and order shows that it was only this judgment that was set aside. Thereafter the suit was against Mrs. Brantley alone, for a sum within the jurisdiction of the justice of the peace. This was not affected by the fact that that officer subsequently, in rendering judgment, recited that plaintiffs dismissed as to the other defendants. That had been done in the District Court, and the facts which conferred jurisdiction on the Justice Court having transpired, such power was not affected by the recital in the judgment. The other defendants were not before that court for any adjudication.

The transfer of the cause should have been made directly from the District Court to the Justice Court, but the fact that it went through the County Court was an irregularity merely, which did not defeat the jurisdiction of the proper tribunal when finally reached.

3. The suit was properly brought in the county where some of the defendants resided, and the attachment could properly run to any county in the State where Mrs. Brantley had property.

4. The attachment was regular when sued out, and the fact that the demand was subsequently reduced without change in its character, did not render the writ nugatory.

5. The judgment of the Justice Court, in so far as it foreclosed the attachment lien on the property and charged the debt upon it, was valid, and the sale under it passed the title to the purchasers.

6. The sale to defendants being executory, and the purchase money having been neither paid nor tendered, plaintiffs were entitled to recover the land sued for. The judgment is therefore reversed, and judgment will be here rendered for plaintiffs for the land.

*Reversed and rendered.*

Delivered June 14, 1894.